IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

UNITED STATES OF AMERICA,            )
                                     )
                    Plaintiff,       )
                                     )
v.                                   )        Case No. 13-00291-07-CR-W-BCW
                                     )
WILLIAM F. PARRY,                    )
                                     )
                    Defendant.       )

ORDER

This matter is currently before the Court on the following motions filed by defendant

William F. Parry:

    1.  Motion to Transfer (doc #173);[1] and

    2.  Motion for Severance (doc #196).

For the reasons set forth below, these motions are denied.

I.  INTRODUCTION

On August 13, 2013, defendant William F. Parry, along with seventeen others, was

charged by indictment.[2]  On September 10, 2013, the government was granted leave to amend

the indictment.  Defendant Parry is charged in nine counts[3] of this forty-four count

_____

[1]Also pending is the government's Motion for Extension of Time to Respond to Motion to
Transfer (doc #174).   The government has since filed its Response to Defendant William F.
Parry's Motion to Transfer Venue (doc #212).   The Court finds the government's response
properly filed and the motion for extension of time moot.
[2]Defendant Parry is also charged with two counts of wire fraud in Case No.
12-00307-01-CR-W-BCW.   Case No. 12-00307 has been consolidated for trial with Case No.
13-00291-01/18-CR-W-BCW.
[3]While the caption of the indictment lists defendant Parry as included in Counts 9 and 10, the
actual charges contained in Counts 9 and 10 do not include defendant Parry.

indictment—Count 1 (conspiracy to commit wire fraud and contraband cigarette trafficking); Counts 2, 5, 6 and 8 (trafficking in contraband cigarettes); and Counts 21, 22, 37 and 38 (wire fraud).   The remaining counts of the indictment charge various other defendants with trafficking in contraband cigarettes, wire fraud and a conspiracy to launder the proceeds of trafficking in contraband cigarettes.   The indictment provides in part:

## COUNT ONE

From on or about July 2010, and continuing until on or about January 26, 2012, said dates being approximate, in the Western District of Missouri and elsewhere, the defendants, CRAIG SHEFFLER, DAVID BISHOP, T. CAMERON JONES, GHOLAMREZA "REZA" TADAIYON, GERALD E. BARBER, HARRY NAJIM, WILLIAM F. PARRY, TARA SUNDOWN, PHILIP CHRIST, MOUSA JUMA, TEDDY FRENCHMAN, MARK BISHOP, PIOTR HOFFMANN, PAYAM KHEIMEHDOOZ, MOHSEN ROSTAMI, NICOLE SHEFFLER, SALVATORE TORNABENE and AJ'S WHOLESALE, LLC,[4] did knowingly and intentionally combine, conspire, confederate and agree with others both known and unknown, to commit offenses against the United States, that is, wire fraud, in violation of Title 18, United States Code, Section 1343; contraband cigarette trafficking, in violation of Title 18, United States Code, Sections 2341 through 2346.

### Background and General Allegations

\* \* \*

7.     During all times relevant to this conspiracy, WILLIAM F. PARRY owned and operated Wolf's Run, located in Irving, New York, a business that, among other things, operated a gas station, convenience store, and trucking transport business.   Neither WILLIAM F. PARRY nor Wolf's Run was a licensed New York tobacco wholesaler authorized to bring cigarettes into New York State. SALVATORE TORNABENE was a driver for WILLIAM F. PARRY.

\* \* \*

### Manner and Means

23.     It was part of the conspiracy that UCC 1 [unindicted co-conspirator

---

[4]On August 1, 2014, the court granted the government's motion to amend the indictment to reflect defendant AJ's Candy & Tobacco, LLC's name change.

1], CRAIG SHEFFLER, and TADAIYON would make regular purchases in Kansas City, Missouri, of contraband cigarettes from undercover agents (UCAs) of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in exchange for U.S. currency.

24.     It was part of the conspiracy that T. CAMERON JONES and DAVID BISHOP would coordinate the orders between UCC 1, CRAIG SHEFFLER and TADAIYON.   TADAIYON and GERALD E. BARBER would coordinate the cigarette orders from the vendors in New York State – including WILLIAM F. PARRY, TARA SUNDOWN, AJ's and HCID in Nebraska.

25.     WILLIAM F. PARRY, TARA SUNDOWN, AJ's and Keith Stoldt transported and caused to be transported into New York State unstamped cigarettes without prior approval by the New York Department of Taxation and Finance and without first paying the required $4.35 per pack excise tax. PARRY would then sell those unstamped, untaxed cigarettes at Wolf's Run store. SUNDOWN would then sell those unstamped, untaxed cigarettes at Jan's Smoke shop.   AJ's and PARRY would also sell those unstamped, untaxed cigarettes to other smoke shops on the reservations in New York State.   Stoldt would then sell those unstamped, untaxed cigarettes at his Totem Pole Smoke Shop.

26.     It was further a part of the conspiracy that WILLIAM F. PARRY, TARA SUNDOWN, AJ's and Keith Stoldt would wire transfer money across state lines to prepay for orders of unstamped cigarettes.   At the time of those wire transfers, WILLIAM F. PARRY, TARA SUNDOWN, AJ's and Keith Stoldt knew they were purchasing unstamped cigarettes with the intent that the New York State excise tax would not be pre-collected, thus allowing the sale of the cigarettes at a considerable discount and depriving New York State of its tax revenue.

27.     WILLIAM F. PARRY, TARA SUNDOWN, AJ's and Keith Stoldt would place the order for unstamped cigarettes through PHILIP CHRIST and GERALD E. BARBER.   BARBER, using SCTC, would then place orders for those unstamped cigarettes from TADAIYON and BNC.   TADAIYON would forward the order to DAVID BISHOP, and DAVID BISHOP would e-mail the order for the unstamped cigarettes to SHEFFLER and CTW in Independence, Missouri.

28.     After the orders had been placed, through the end of September 22, 2011, TADAIYON, MARK BISHOP and PIOTR HOFFMANN would pick-up the unstamped cigarettes in the Kansas City, Missouri area and transport them to the SCTC in Grove, Oklahoma.   From SCTC, the unstamped cigarettes would be transported to Wolf's Run, Jan's Smoke Shop, AJ's and the Totem Pole Smoke Shop in New York State by Wolf's Run or a common carrier.

3

\* \* \*

30. At no point during the conspiracy timeframe was the New York State excise tax paid on these cigarette transactions. From the post-*Oneida* date, June, 2011, through the end of the conspiracy, the total state excise tax lost to New York State was approximately $8,148,420.

## Overt Acts

31. In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Western District of Missouri and elsewhere:

\* \* \*

(e) On or about April 15, 2011, UCC 1 and TADAIYON purchased contraband cigarettes from the ATF undercover operation in Kansas City, Missouri;

\* \* \*

(2) On April 15, 2011, SALVATORE TORNABENE picked up the 12,780 cartons of Marlboro cigarettes from the ATF undercover warehouse in Kansas City, Missouri. SALVATORE TORNABENE informed the ATF undercover agents that his boss, WILLIAM F. PARRY, had done nine or ten other deals with TADAIYON.

\* \* \*

(g) On May 26, 2011, UCC 1 paid the ATF undercover agent $453,650 in cash and a $280,000 check for 23,400 cartons of Marlboro cigarettes and 9,000 cartons of other contraband cigarettes. MARK BISHOP picked up the 12,800 cartons of Marlboro cigarettes at the ATF undercover warehouse in Kansas City, Missouri. The contraband cigarettes were delivered to AJ's and Wolf's Run in New York State.

\* \* \*

(k) On August 4, 2011, CRAIG SHEFFLER paid the ATF undercover agent $541,725 in cash for 132 cases (7,920 cartons) of Marlboro cigarettes, and other cigarettes. The following acts were taken by the co-conspirators in this transaction:

4

\* \* \*

(7)     The contraband cigarettes were transported from Oklahoma to Totem Pole Smoke Shop in New York State by Wolf's Run Transport, the company owned by WILLIAM F. PARRY.  PARRY was paid $7,950 by BNC for transportation fees.

\* \* \*

(m)     On September 15, 2011, CRAIG SHEFFLER purchased 15,480 cartons (258 cases) of untaxed Marlboro cigarettes and 5,760 (96 cases) cartons of untaxed Newport cigarettes from the ATF undercover agents for $613,080.  CRAIG SHEFFLER paid $490,000 of this amount in cash.  The following acts were taken by the co-conspirators in this transaction:

\* \* \*

(5)     On September 15, 2011, the following wire transfers took place in order to complete the sale of the contraband cigarettes:

\* \* \*

(B)     Wolf's Run transferred $235,080 to the SCTC;

\* \* \*

(7)     On September 16, 2011, TADAIYON and HOFFMANN drove with the contraband cigarettes from Independence, Missouri, to Grove, Oklahoma.  The truck was stopped by the Missouri Highway Patrol near Neosho, Missouri. The driver was PIOTR HOFFMANN who provided a bill of lading to the trooper which identified the cigarettes as coming from BNC corporation, 23208 E. US 24 Highway, Independence, Missouri, to SCTC in Grove, Oklahoma.  The bill of lading also listed the carrier as being Wolf's Run Transport;

(8)     On September 19, 2011, TORNABENE was stopped by Missouri Highway Patrol troopers near Springfield, Missouri, in the Penske rental truck.   The driver, TORNABENE, originally told the trooper that the cigarettes were coming from an Indian Reservation and were being delivered to an Indian Reservation.  TORNABENE then told the trooper that cigarettes

5

were coming from and going to a tobacco wholesaler. TORNABENE then told an ATF agent that he had flown to Oklahoma City to [pick up] the cigarettes from the Seneca Cayuga Indian Reservation, in Grove, Oklahoma, and was driving them to Virginia. The ATF agent called Juma brothers in Virginia and confirmed with MOUSA JUMA that the cigarettes were being delivered to his business.

\*   \*   \*

(o)     October 13, 2011, SHEFFLER paid the ATF undercover agent $638,240 in currency and a $10,000 check for 354 cases of contraband cigarettes. The following acts were taken by the co-conspirators in this transaction:

\*   \*   \*

(5)     HOFFMANN drove the Penske truck containing the contraband cigarettes to the Holiday Inn express in North Kansas City, Missouri. In the hotel parking lot, HOFFMANN exchanged vehicles with WILLIAM F. PARRY. ATF agents followed PARRY with the load of cigarettes from Kansas City, Missouri, to Terre Haute, Indiana. Agents in Buffalo, New York, observed the same Penske truck arrive early the following morning at Wolf's Run in Irving, New York;

\*   \*   \*

(v)     On December 16, 2011, PARRY purchased 110 cases of untaxed Marlboro cigarettes and 30 cases of untaxed Newport cigarettes from ATF undercover agents for $265,800 in cash. The transaction took place in Irving, New York.

\*   \*   \*

(y)     None of the co-conspirators reported the sales of the unstamped cigarettes listed above to New York State, as required by law.

(z)     None of the co-conspirators obtained prior approval from the New York Department of Taxation and Finance for the transportation of the above-listed cigarettes into New York State, as required by law.

(aa)     None of the co-conspirators prepaid the New York State excise tax on the unstamped cigarettes listed above, as required by law.

All in violation of Title 18, United States Code, Section 371.

## **CONTRABAND CIGARETTE TRAFFICKING ACT**

### **COUNT TWO**

On or about August 4, 2011, in the Western District Missouri and elsewhere, the defendants GHOLAMREZA "REZA" TADAIYON, MARK BISHOP, and WILLIAM F. PARRY, aided and abetted by CRIAG SHEFFLER, DAVID BISHOP, T. CAMERON JONES, and GERALD E. BARBER, did knowingly ship, transport, receive, possess, sell, distribute, and purchase in excess of 10,000 contraband cigarettes, as defined in Title 18, United States Code, Section 2341:

| Count | Date | Defendants/ Drivers | Cartons of Cigarettes | Delivered from Kansas City, Missouri to: |
|-------|------|---------------------|-----------------------|------------------------------------------|
| 2 | [8/4/11] | MARK BISHOP, TADAIYON, & PARRY | 7,920 | Oklahoma & New York |

All in violation of Title 18, United States Code, Sections 2342(a), 2344(a) and 2.

\* \* \*

### **COUNT FIVE**

On or about [September 19, 2011], in the Western District Missouri and elsewhere, the defendant SALVATORE TORNABENE, aided and abetted by CRAIG SHEFFLER, DAVID BISHOP, T. CAMERON JONES, GERALD E. BARBER, MOUSA JUMA, and WILLIAM F. PARRY, did knowingly ship, transport, receive, possess, sell, distribute, and purchase in excess of 10,000 contraband cigarettes, as defined in Title 18, United States Code, Section 2341:

| Count | Date | Defendants/ Drivers | Cartons of Cigarettes | Delivered from Kansas City, Missouri to: |
|-------|------|---------------------|-----------------------|------------------------------------------|
| 5 | [9/19/11] | TORNABENE | 8,280 | Oklahoma & Virginia |

All in violation of Title 18, United States Code, Sections 2342(a), 2344(a) and 2.

Case 4:13-cr-00291-BCW   Document 260   Filed 01/13/15   Page 7 of 28

## COUNT SIX

On or about [September 21, 2011], in the Western District Missouri and elsewhere, the defendants WILLIAM F. PARRY, aided and abetted by CRAIG SHEFFLER, DAVID BISHOP, T. CAMERON JONES, GERALD E. BARBER, and TARA SHUNDOWN did knowingly ship, transport, receive, possess, sell, distribute, and purchase in excess of 10,000 contraband cigarettes, as defined in Title 18, United States Code, Section 2341:

| Count | Date | Defendants/Drivers | Cartons of Cigarettes | Delivered from Kansas City, Missouri to: |
|-------|------|--------------------|-----------------------|------------------------------------------|
| 6 | [9/21/11] | PARRY | 9,180 | New York |

All in violation of Title 18, United States Code, Sections 2342(a), 2344(a) and 2.

\* \* \*

## COUNT EIGHT

On or about October 13, 2011, in the Western District Missouri and elsewhere, the defendants GHOLAMREZA "REZA" TADAIYON, MARK BISHOP, WILLIAM F. PARRY and PIOTR HOFFMANN, aided and abetted by CRAIG SHEFFLER, DAVID BISHOP, T. CAMERON JONES, and TEDDY FRENCHMAN, did knowingly ship, transport, receive, possess, sell, distribute, and purchase in excess of 10,000 contraband cigarettes, as defined in Title 18, United States Code, Section 2341:

| Count | Date | Defendants/Drivers | Cartons of Cigarettes | Delivered from Kansas City, Missouri to: |
|-------|------|--------------------|-----------------------|------------------------------------------|
| 8 | [10/13/11] | HOFFMANN, PARRY, MARK BISHOP, & TADAIYON | 18,180 | Nebraska & New York |

All in violation of Title 18, United States Code, Sections 2342(a), 2344(a) and 2.

\* \* \*

## WIRE FRAUD

8

1. The allegations contained in Count One are hereby realleged and incorporated by reference as though set forth in full.

2. On or about the dates set forth below, and [sic] the Western District Missouri, the defendants named below, did knowingly, intentionally, and unlawfully devise, execute and attempt to execute a scheme and artifice to defraud the State of New York, and to obtain money by means of false and fraudulent pretenses, representations, or promises, did transmit or cause to be transmitted in interstate or foreign commerce cigarette orders and other communications, by means of … a wire communication, certain signs, signals, pictures or sounds, for the purpose of executing a scheme or artifice:

| Count | Date | Wire transmission from and to: | Defendants |
|-------|------|-------------------------------|------------|
| 21 | 09/14/11 | E-mail from D. Bishop in Canada to SHEFFLER in Missouri (rev. invoice requested) | CRAIG SHEFFLER, DAVID BISHOP, JONES, TADAIYON, BARBER, PARRY, and SUNDOWN |
| 22 | 09/14/11 | E-mail from SHEFFLER in Missouri to D. Bishop in Canada and JONES in Washington (rev. invoice) | CRAIG SHEFFLER, DAVID BISHOP, JONES, TADAIYON, BARBER, PARRY, and SUNDOWN |
| 37 | 12/08/11 | Telephone call from ATF U/C in Missouri to WILLIAM PARRY in New York | WILLIAM F. PARRY |
| 38 | 12/12/11 | Telephone call between WILLIAM F. PARRY in New York and ATF U/C in Missouri | WILLIAM F. PARRY |

All in violation of Title 18, United States Code, Sections 1343 and 2.

(Doc #62)

## II.  DISCUSSION

### A.  Motion for Severance

Defendant Parry contends that Counts 37 and 38 should be severed from the other counts of

9

the indictment as the offense alleged does not involve any common activity involving all of the defendants charged. (Motion for Severance (doc #196) at 7) First, Parry states that these counts stem from transactions initiated by undercover government agents and involve only defendant Parry. (Id. at 6) Parry argues that the transaction that provided a basis for these wire fraud charges occurred wholly on Parry's sovereign land located upon the Cattaraugus reservation. (Id.) As Parry did not transport or possess the alleged contraband cigarettes off of the reservation, no violation of New York State Tax Law § 471 took place. (Id.) Without the state tax violation,[5] Parry cannot be found to have knowingly executed a scheme to defraud the State of New York by means of a wire communication. (Id.) Therefore, according to defendant Parry, there is no commonality of activity between Parry's actions and the co-defendants' purported transporting, selling, possessing or receiving contraband cigarettes. (Id. at 7)

Next, defendant Parry contends that he should be severed from several co-defendants, specifically Harry Najim, Payam Kheimehdooz, Mohsen Rostami and AJ's Candy & Tobacco,[6] in that the indictment fails to allege any shared participation in the same act or transaction or in the same series of acts or transactions. (Motion for Severance (doc #196) at 7) According to defendant Parry, the government cannot save misjoinder just because it linked all defendants in a conspiracy count. (Id. at 8) "Linking can be allowed, to uphold joinder, only where the conspiracy charge was put forth in good faith."[7] (Id.)

---

[5]Contrary to defendant Parry's argument, the Court has found that the New York state cigarette taxing scheme is applicable to defendant on the Cattaraugus Indian Reservation. (See doc #259 at 9-10)

[6]The Court notes that defendant AJ's Wholesale, LLC, formerly AJ's Candy & Tobacco, LLC, entered a guilty plea on February 6, 2014.

[7]Defendant Parry cites the case of United States v. Donaway, 447 F.2d 940 (9th Cir. 1971), to support this proposition. However, the Court finds the Donaway case inapplicable as the conspiracy count in that case was dismissed.

10

Finally, defendant Parry contends that he will be prejudiced in a joint trial by the following:

> 27.     Specifically, as Mr. Parry is a native Seneca residing on sovereign property not within New York State, he has a defense to the state tax liability the other defendants do not.  In addition to this being an antagonistic defense, Mr. Parry runs the risk of inferred guilt by association with the co-defendants who do not enjoy immunity from state tax law.

> 28.     This rings true for all counts of the indictment, but specifically the counts described above, where the alleged transactions all occurred on Mr. Parry's sovereign land.  Further, Mr. Parry may consider testifying with regard to the isolated incidents of wire fraud (counts 37 and 38) in order to explain his knowledge of his sovereign status while engaging in the possession and sale of cigarettes on reservation property.

> 29.     However, in the counts that involve Mr. Parry merely as a vessel for transportation [i.e. – a common carrier], he may wish to stay silent, as it is the government's burden to prove knowledge on his part. …

> 30.     Therefore, counts 2 and 5 should be severed from counts 6 and 8, where Mr. Parry is alleged to have received contraband cigarettes at his property on the Cattaraugus reservation.

(Motion for Severance (doc #196) at 9-10)   The Court will address each of defendant's arguments.

   1. <u>Joinder of Counts 37 and 38</u>

Rule 8 of the Federal Rules of Criminal Procedure provides for the joinder of offenses or defendants.   Rule 8 provides:

> (a)     **Joinder of Offenses.**   The indictment ... may charge a defendant in separate counts with 2 or more offenses if the offenses charged ... are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

> (b)     **Joinder of Defendants.**   The indictment ... may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.   The defendants may be charged in one or more counts together or separately.   All defendants need not be charged in each count.

11

Fed.R.Crim.P. 8.

Defendant argues that Rule 8(b) controls when assessing misjoinder when a defendant named in one count attacks the joinder of other counts in the same indictment that do not contain charges against him. (Defendant's Reply to Government's Suggestions in Opposition to Defendant's Motion to Sever (doc #225) at 1-2) "The relevant inquiry here is whether the substantive offenses charged constitute a 'series of acts or transactions.'" (Id. at 2)

The Court finds that Counts 37 and 38, along with the other charges in the indictment, are alleged to be part of the same series of acts or transactions to defraud the State of New York, and to obtain money by means of false and fraudulent pretenses, representation, or promises. Stated another way, Counts 37 and 38, along with the other charges in the indictment, are alleged to be connected with or constitute parts of a common scheme or plan, that is to defraud the State of New York, and to obtain money by means of false and fraudulent pretenses, representations, or promises. Counts 37 and 38 are properly joined with the other counts of the indictment.

2. Defendants Are Properly Joined

Rule 8(b), Federal Rules of Criminal Procedure, establishes the requirements for joinder of defendants. Defendants are permitted to be joined where "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." There is a preference in the federal system for joint trials of defendants who are indicted together. See Zafiro v. United States, 506 U.S. 534, 537 (1993). This is increasingly so when it is charged that defendants have engaged in a conspiracy. See United States v. Pou, 953 F.2d 363, 368 (8th Cir.), cert. denied, 504 U.S. 926 (1992).

The question of whether joinder is proper is to be determined from the face of the

12

indictment.  See United States v. Wadena, 152 F.3d 831, 848 (8th Cir. 1998), cert. denied, 526 U.S. 1050 (1999).  See also United States v. Willis, 940 F.2d 1136, 1138 (8th Cir. 1991), cert. denied, 507 U.S. 971 (1993)("the indictment on its face revealed a proper basis for joinder"); United States v. Jones, 880 F.2d 55, 62 (8th Cir. 1989)("the superseding indictment reveals on its face a proper basis for joinder").

Given the factual allegations in the indictment, it is clear that the charge in Count 1 (that between July 2010 and January 26, 2012, defendant Parry, along with his co-defendants Craig Sheffler, David Bishop, T. Cameron Jones, Gholamreza "Reza" Tadaiyon, Gerald E. Barber, Harry Najim, Tara Sundown, Philip Christ, Mousa Juma, Teddy Frenchman, Mark Bishop, Piotr Hoffmann, Payam Kheimehdooz, Mohsen Rostami, Nicole Sheffler, Salvatore Tornabene and AJ's Wholesale, LLC, conspired to commit wire fraud and contraband cigarette trafficking) satisfies the requirement that defendants are alleged to have participated in the same act or in the same series of acts constituting an offense.  Nothing has been presented to suggest that the conspiracy charge was not put forth in good faith.   There is no misjoinder in this case.

### 3.    Defendant Parry is Not Prejudiced By the Joinder

"When defendants are properly joined, there is a strong presumption for their joint trial, as it gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome."  United States v. Casteel, 663 F.3d 1013, 1018 (8th Cir. 2011)(quoting United States v. Lewis, 557 F.3d 601, 609 (8th Cir. 2009)).  In addition, there is a preference in the federal system for joint trials of defendants who are indicted together.  See Zafiro v. United States, 506 U.S. 534, 537 (1993).  However, Rule 14, Federal Rules of Criminal Procedure, permits severance where joinder would result in unfair prejudice to a defendant.  The decision to sever lies in the trial court's discretion.  See United States v. Shivers, 66 F.3d 938, 939 (8th Cir.),

13

cert. denied, 516 U.S. 1016 (1995).

As set forth above, defendant Parry has made several claims of prejudice which all have the same underlying theme, that Parry is a native Seneca residing on sovereign property not within New York State who is, therefore, immune from state tax law. The Court has examined this claim in the context of defendant Parry's Motion to Dismiss and has found that the New York state cigarette taxing scheme is applicable to defendant on the Cattaraugus Indian Reservation. (See doc #259 at 9-10)

With respect to defendant Parry's claim of antagonistic defenses, Parry asserts that he has a defense that other defendants do not enjoy, that as a native Seneca residing on sovereign property not within New York State, he is immune from state tax law. However, even if Parry were immune from state tax law, which the Court has found not to be the case, his argument for prejudice based on mutually antagonistic defenses at trial must still fail. Mutually antagonistic or irreconcilable defenses are those which force the jury to disbelieve the core of one defense in order to believe the core of the other. See Hood v. Helling, 141 F.3d 892, 896 (8th Cir.), cert. denied, 525 U.S. 1004 (1998); United States v. Jones, 880 F.2d 55, 63 (8th Cir. 1989). Defendant Parry has not shown how his claimed immunity from state tax law would force the jury to disbelieve the core of another defendant's defense.

Defendant Parry next claims that he will be prejudiced by inferred guilt by association with co-defendants who do not enjoy immunity from state tax law. To the extent that evidence would be admissible in a joint trial that would otherwise not be admissible if defendant Parry were tried alone, the law is clear that a defendant is not entitled to severance simply because the evidence against a co-defendant is more weighty than the evidence against him or because evidence admissible against a co-defendant may make his case more difficult to defend. In United States

14

v. Willis, 940 F.2d 1136 (8th Cir. 1991), the court found:

> There can be little doubt that the joint trial made it more difficult for Willis [a minor participant charged in only two of thirty-two counts] to defend himself. The evidence clearly revealed that Duke was a major drug dealer with a "far-flung" operation. But difficulty alone is not a reason to reject joinder. A showing of clear prejudice must be made.

Id. at 1139. See also United States v. Pecina, 956 F.2d 186, 188 (8th Cir. 1992); United States v. Davis, 882 F.2d 1334, 1340 (8th Cir. 1989), cert. denied, 494 U.S. 1027 (1990).

Prejudice may occur if the jury is unable to compartmentalize the evidence against each defendant. See Willis, 940 F.2d at 1138. However, this potential problem can normally be resolved through applicable jury instructions. See Pecina, 956 F.2d at 188 ("Disparity in the weight of the evidence as between ... parties does not entitle one to severance ... In addition, the district court gave precautionary instructions advising the jury of the proper use of evidence as related to each defendant and each charge"); United States v. McConnell, 903 F.2d 566, 571 (8th Cir. 1990), cert. denied, 498 U.S. 1106 (1991)("the roles of the individual [defendants] were sufficiently distinct that the jury, aided by the court's instructions, could compartmentalize the evidence against each defendant"); United States v. Jones, 880 F.2d 55, 63 (8th Cir. 1989); United States v. Jackson, 549 F.2d 517, 526 (8th Cir.), cert. denied, 430 U.S. 985 (1977).

There is no reason to question that any possible prejudice to defendant Parry resulting from evidence presented against his co-defendants cannot be resolved through precautionary jury instructions.

Finally, defendant Parry asserts prejudice in that he may consider testifying with regard to the incidents of wire fraud (Counts 37 and 38) and trafficking in contraband cigarettes (Counts 6 and 8) in order to explain his knowledge of his sovereign status while engaging in the possession and sale of cigarettes on reservation property, while choosing to remain silent on the counts where

15

he is charged as a common carrier, as it is the government's burden to prove knowledge on his part.

The Eighth Circuit Court of Appeals has provided the following guidance when a defendant claims

prejudice on this basis:

> Severance of counts is required on such a basis "only when a defendant has made a 'convincing showing that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other.'" United States v. Jardan, 552 F.2d 216, 220 (8th Cir. 1977)(quoting Baker v. United States, 401 F.2d 958, 977 (D.C. Cir. 1968)). "In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying." Id.

United States v. Mann, 701 F.3d 274 (8th Cir. 2012), cert. denied, 134 S.Ct. 470 (2013). As set

forth above, the Court has found that the New York state cigarette taxing scheme is applicable to

defendant Parry on the Cattaraugus Indian Reservation. Thus, the Court has found that defendant

does not enjoy a sovereign status while engaging in the possession and sale of cigarettes on

reservation property. Defendant has failed to make a convincing showing that he has important

testimony to give concerning Counts 6, 8, 37 and 38, or a strong need to refrain from testifying on

the other counts.

There is no prejudice in this case that would require severance in order to ensure a fair trial.

B.      Motion to Transfer

The indictment alleges that defendants conspired to commit wire fraud and contraband

cigarette trafficking "in the Western District of Missouri, and elsewhere." (Doc #62 at 10)

Many of the overt acts listed in the indictment occurred at an undercover warehouse in Kansas

City, Missouri. As set forth in United States v. Overshon, 494 F.2d 894 (8th Cir.), cert. denied,

419 U.S. 878 (1974):

Case 4:13-cr-00291-BCW   Document 260   Filed 01/13/15   Page 16 of 28

... The applicable statute provides:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a).   Accordingly, it is settled law that venue as to prosecution of all members of a conspiracy lies either in the jurisdiction in which the conspiratorial agreement was formed or in any jurisdiction in which an overt act in furtherance of the conspiracy was committed by any of the conspirators. ...

494 F.2d at 900.   See also United States v. Hull, 419 F.3d 762, 768 (8th Cir. 2005), cert. denied, 547 U.S. 1140 (2006)("In a conspiracy case, venue is proper in any district in which any act in furtherance of the conspiracy was committed by any of the conspirators even though some of them were never physically present there."); United States v. Kim, 246 F.3d 186, 193 n.5 (2d Cir. 2001)(venue is proper in a conspiracy prosecution in any district in which an overt act was committed by any of the coconspirators).   Given the allegations of the indictment, venue is certainly proper in the Western District of Missouri.   Defendant Parry, however, requests that the case be transferred to the Western District of New York.

Rule 21(b) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may transfer the proceeding ... against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice."   The decision whether to transfer a trial for convenience is addressed to the sound discretion of the court.   See United States v. Maldonado-Rivera, 922 F.2d 934, 966 (2d Cir. 1990), cert. denied, 501 U.S. 1211 (1991); United States v. McGregor, 503 F.2d 1167, 1169 (8th Cir. 1974), cert. denied, 420 U.S. 926 (1975); United States v. Phillips, 433 F.2d 1364, 1368 (8th Cir. 1970), cert. denied, 401 U.S. 917 (1971); United States v. Stein, 429 F.Supp.2d 633, 645 (S.D.N.Y. 2006).

"Defendants bear the burden of justifying such a transfer." Stein, 429 F.Supp.2d at 645. See also United States v. Estrada, 880 F.Supp.2d 478,482 (S.D.N.Y. 2012)("Courts in this district have uniformly placed the burden on the defendant to show that the interests of justice require transfer.")

In support of transferring the case, defendant Parry provides the following argument:

4. Counsel for Mr. Parry moves for transfer of this case to the Western District of New York because all pertinent conduct alleged to have been engaged in by Mr. Parry took place in the Western District of New York. Mr. Parry is an enrolled member of the Seneca Nation of Indians, and resides on Nation land surrounded by New York State. Mr. Parry both lives and operates a business located within the Western District of New York. The government has alleged that Mr. Parry committed violations of 18 U.S.C. § 1343 and § 2341 *et. seq.*, for causing, by means of interstate wire communication, unstamped cigarettes to be shipped into New York State (i.e., his residence on the Cattaraugus reservation) and taking possession of them without paying the allegedly applicable New York State tax.

5. The conspiracy charge within the Sheffler indictment includes a time frame of "on or about July 2010, and continuing until on or about January 26, 2012." As the indictment sets forth, the ATF … established an undercover operation in Kansas City, Missouri at that time, in an attempt to sell contraband cigarettes [supplied by the government] to the various defendants. Mr. Parry is alleged to have "transported and cause to be transported into New York State unstamped cigarettes" and "sell those unstamped, untaxed cigarettes" at his store in Irving, New York and to other smokeshops on the reservations in New York State. … [A]ll actions alleged on Mr. Parry's behalf have a direct nexus with the Western District of New York. The cigarettes are alleged to have been shipped to New York State, Parry is alleged to have sold them in New York State, and for all but one instance, Parry was never even alleged to have left New York State. Parry is never alleged to have visited the UC warehouse in Kansas City, as all of his operations remained in the Western District of New York.

6. The only connection to Kansas City, Missouri, is manufactured by the government; as that is where they chose to place the UC warehouse and in turn, their government agents. In addition to all of the overt acts allegedly taking place in New York, the alleged unpaid tax involved is a New York State tax. Further, the Search Warrant secured by the ATF agents involved in the December 2012 search was applied for, reviewed and granted by a U.S. Magistrate Judge for the Western District of New York. Finally, the applicable law which purports to criminalize Mr. Parry's alleged behavior remains New York State Tax Law.

7.       As these complex tax and Native American sovereignty issues have been litigated in the federal forum within New York before, it logically follows that the Western District of New York remains the more appropriate forum.  As indicated above, the alleged taxable event which purportedly bestows New York State's right to said taxes occurs only when the unstamped cigarettes enter New York State and come into the possession of someone who is not a licensed wholesaler or stamping agent pursuant to Tax Law § 471.   The application of New York State taxes to sovereign Native American activities has been the subject of much controversy and litigation for many years.  Moreover, there is currently a challenge to the New York State cigarette tax law being litigated in New York State Courts which could invalidate the very tax legislation that criminalizes the actions Mr. Parry is alleged to have engaged in.  Accordingly, … defendant Parry urges this Court to consider transfer on the grounds that the Western District of Missouri should abstain from passing upon issues of New York State Tax Law which are currently being litigated in the underlying New York State Courts. …

(Motion to Transfer (doc #173) at 4-7)(footnotes omitted)

The following provides a good starting point for the Court's analysis of a defendant's

motion to transfer venue:

At the outset it must be recognized that every litigation, particularly a criminal prosecution, imposes burdens upon a defendant and brings in its wake dislocation from normal occupational and personal activities.  The burdens imposed and inconvenience suffered vary from case to case and from defendant to defendant within a case; it is a matter of degree depending upon a variety of circumstances.   In this respect this case is no different from any other.   The Court is satisfied that no matter where this trial is conducted, there will be inconvenience to the parties, their executives, their counsel and their witnesses.   But mere inconvenience, interference with one's routine occupational and personal activities, and other incidental burdens which normally follow when one is called upon to resist a serious charge do not ipso facto make the necessary showing that a transfer is required in the interest of justice.   As a general rule a criminal prosecution should be retained in the original district.   To warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome; and, necessarily, any such determination must take into account any countervailing considerations which may militate against removal.

United States v. Culoso, 461 F. Supp. 128, 136-37 (S.D.N.Y. 1978), aff'd, 607 F.2d 999 (2d Cir.

1979).   To determine whether defendants have met their burden of justifying a transfer, the Court

19

should consider the following factors:

> (a) location of the defendants; (b) location of the possible witnesses; (c) location of the events likely to be at issue; (d) location of relevant documents and records; (e) potential for disruption of the defendants' businesses if transfer is denied; (f) expenses to be incurred by the parties if transfer is denied; (g) location of defense counsel; (h) relative accessibility of the place of trial; (i) docket conditions of each potential district; and (j) any other special circumstance that might bear on the desirability of transfer.

United States v. Stein, 429 F.Supp.2d 633, 645 (S.D.N.Y. 2006)(citing Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 243-44 (1964)).

The Court will discuss each of the Platt factors.

### 1. Location of the Defendants

While defendant Parry's home is in New York, there are currently nine other defendants set for trial with Parry in this case and their homes are scattered across the country.[8]  Three of these defendants live in New York:  defendant Tara Sundown lives in Basom, New York (Pretrial Services Report (doc #37)); defendant Philip Christ lives in Hamburg, New York (Pretrial Services Report (doc #36)); and defendant Salvatore Tornabene lives in Hamburg, New York (Pretrial Services Report (doc #44)).  Defendant T. Cameron Jones lives in Quilcene, Washington.  (Pretrial Services Report (doc #30))  Defendant Gholamreza Tadaiyon lives in Weston, Florida.  (Pretrial Services Report (doc #47))  Defendants Payam Kheimehdooz lives in Miami, Florida.  (Pretrial Service Report (doc #48))  Mohsen Rostami lives in Sunrise, Florida.  (Pretrial Services Report (doc #49))  Defendant Harry Najim lives in Wichita, Kansas.  (Pretrial Services Report (doc #81)  Defendant Mousa Juma lives in Chesapeake, Virginia.  (Pretrial Services Report (doc #34))

---

[8]David Bishop, Mark Bishop and Piotr Hoffman have warrants outstanding.   Craig Sheffler and AJ's Wholesale, LLC, have entered guilty pleas.   Gerald Barber, Teddy Frenchman and Nicole Sheffler have change of plea hearings scheduled.

Given the preference in the federal system for joint trials of defendants who are indicted together,[9] especially defendants charged in a conspiracy,[10] the Court finds the defendants should be tried together.[11]   Given the location of the defendants set for trial, it does not appear that the Western District of New York would be a more convenient forum than the Western District of Missouri for the majority of the defendants.   While four defendants live in New York, six defendants do not, and those six are located across the country, from Washington to Florida. This factor does not favor a transfer.

2.   Location of the Possible Witnesses

In support of this factor, defendant Parry states:

> Without revealing too much of the defense, suffice it to say that several witnesses necessary to defend the charges at bar are all in New York and would have to be transported and housed in Missouri at great expense.   So not to prejudice the defense by revealing the names and content of potential witness testimony, the defense requests that the Court conduct an *in-camera* hearing, wherein defense counsel will discuss the identity and substance of each essential defense witness.

(Motion to Transfer (doc #173) at 11)

While the Court acknowledges that defendant Parry may not want to reveal the names and anticipated testimony of his witnesses to the government at this time, the Court finds that Parry could have provided the Court with the number of witnesses (rather than "suffice it to say … several') and the basic subject matter on which they would testify[12] in support of his transfer

---

[9] See Zafiro v. United States, 506 U.S. 534, 537 (1993).
[10] See United States v. Pou, 953 F.2d 363, 368 (8th Cir.), cert. denied, 504 U.S. 926 (1992).
[11] The Court notes that while defendant Parry did file a motion for severance of defendants in this case (which motion for severance was filed subsequent to the filing of the motion to transfer), Parry only asked to be severed from Harry Najim, Payam Kheimehdooz and Mohsen Rostami. Thus, even if this request were granted, the Court would be left with numerous defendants to be tried with Parry, three of whom do not live in the State of New York.
[12] To the extent that defendant Parry intends to call witnesses to testify as to his alleged sovereign status while engaging in the possession and sale of cigarettes on reservation property, the Court

request, without the necessity of an *in-camera* hearing. As set forth in <u>United States v. Estrada</u>, 880 F.Supp.2d 478, 482 (S.D.N.Y. 2012), the defendant has the burden to show "specific examples of witnesses' testimony and their inability to testify because of the location of the trial." The Court notes that defendant Parry has not asserted that any witness would be unable to come to the Western District of Missouri, rather only that witnesses "would have to be transported and housed in Missouri at great expense." As set forth in <u>Estrada</u>, the cost associated with witnesses' travel is a separate factor. <u>Id.</u> at 483.

Counterbalancing defendant Parry's "several witnesses … in New York" are the government's witnesses, i.e. several ATF agents involved in this particular investigation, as well as an IRS agent and financial analysts, all of whom reside and work in the Kansas City area, and a co-conspirator witness, Leisa Guerrero, who lives in Nebraska. (<u>See</u> Government's Response to Defendant William F. Parry's Motion to Transfer Venue (doc #212) at 8-9) Also, other defendants will undoubtedly call witnesses and given that the majority of these defendants did not live or work in New York, it is unlikely that the Western District of New York would be a more convenient location for their witnesses than the Western District of Missouri. This factor does not favor a transfer.

3.   <u>Location of the Events Likely to Be at Issue</u>

In support of this factor, defendant Parry states that "all of the events likely to be in issue with regard to Mr. Parry transpired in the Western District of New York …." (Motion to Transfer (doc #173) at 12)

The government responds:

---

has found that the New York state cigarette taxing scheme is applicable to Parry on the Cattaraugus Indian Reservation. (<u>See</u> doc #259 at 9-10)

This is a conspiracy case where the offense and overt acts took place across the United States and Canada. … Codefendants engaged in their conspiracy in their respective home states, but also drove to Kansas City, Missouri to pick up cigarettes, and drove to Oklahoma and Nebraska where others then picked up the cigarettes to continue their delivery to New York State.   Of importance is that the ATF investigation originated in Kansas City, and that the cigarettes that were the object of the conspiracy originated in Kansas City.   Because Parry and his codefendants utilized Kansas City to further their criminal acts—including personally traveling to Kansas City in furtherance of their conspiracy—they cannot now be surprised that they must answer for their crimes in the Western District of Missouri. …

(Government's Response to Defendant William F. Parry's Motion to Transfer Venue (doc #212) at 12)

The Court finds that the indictment sets forth overt acts which took place at various locations throughout the United States.   The ATF undercover operation was centered in Kansas City, Missouri.   (See Indictment (doc #62) at 17)   While many of the overt acts which name defendant Parry took place in New York, even Parry is alleged to have travelled to Kansas City, Missouri, in furtherance of the conspiracy.   (Id. at 25)   This factor does not favor a transfer.

4.   Location of Relevant Documents and Records

In support of this factor, defendant Parry states:

[T]he location of documents and records likely to be involved are maintained in the Western District of New York.   All of Mr. Parry's records which are likely to be utilized in his defense are stored at his warehouse on reservation [in the Western District of New York].   Requiring him to physically transfer such evidence to Kansas City is not only onerous, but also runs the risk of interfering with his daily operations [… these documents include business and financial records, operating systems, surveillance records and additional evidence].   The government does not shoulder the same burden, as all of its discovery has been loaded electronically onto a portable hard drive and distributed to all defendants across the country.

(Motion to Transfer (doc #173) at 12)

The government points out that defendant Parry has produced no Rule 16 disclosures to the

23

government of items Parry intends to use at trial as defense counsel claimed in an email to government counsel, sent after the Motion to Transfer was filed, that "we haven't made a determination as to what we may or may not use in our defense." (Doc #175-2)

Given that defendant Parry's counsel had not yet made a determination as to what documents they may or may not use at trial, the Court finds the representation that requiring Parry to physically transfer such evidence to Kansas City would be onerous, as well as disruptive to his business, to be an exaggeration. This factor does not favor a transfer.

### 5. Potential for Disruption of the Defendants' Businesses

In support of this factor, defendant Parry claims:

> [Defendant Parry] not only resides in the Western District of New York, but runs an extensive and time-consuming business there which would suffer in his absence. Mr. Parry manages the operations end of his business, Wolf's Run Transport, which involves the day to day oversight of up to twenty employees. He also is one of the few commercially licensed drivers in his company who is authorized to transport fuel and operate heavy machinery. As such, his presence is required at all times, as well as in the event of any fuel-related emergencies. Mr. Parry devotes over eighty hours per week to the successful operation of his business. Requiring him to continually travel to Missouri jeopardizes his business, as well as the stability of his employees and customers.

 (Motion to Transfer (doc #173) at 11)

The Court notes that time defendant spends in trial is time that is not available to defendant for business operations whether the trial is held in the Western District of New York or the Western District of Missouri. In Case No. 12-00307-01-CR-W-BCW, defendant Parry advised the Pretrial Services Office that he owns a second home in Phoenix, Arizona, where he and his wife spend the winter months. (Pretrial Services Report at 1) The trial of this matter is set on the joint criminal jury trial docket commencing February 23, 2015. It would appear that if defendant is able to leave his business to winter in Arizona, his business will not be unduly jeopardized by a

24

winter trial in the Western District of Missouri.   In addition, the Court has attempted to minimize the amount of travel required of defendant by allowing defendant to participate by telephone whenever possible.   This factor does not favor a transfer.

        6.      <u>Expenses to Be Incurred By the Parties</u>

In support of this factor, defendant Parry states:

> Transferring the case to the Western District of New York will remove the need for travel and lodging expense of Mr. Parry's defense counsel, and will also obviate the need for local counsel in Kansas City, Missouri, which Mr. Parry has had to retain to handle matters such as filing and status appearances.   To reiterate, defendant will also suffer travel costs for himself and his witnesses, as well as a loss of business due to his (and key employees') absence.

(Motion to Transfer (doc #173) at 12-13)

While defendant Parry's expenses will be higher in the Western District of Missouri than if the case were tried in the Western District of New York, the majority of defense counsel, as set forth below, as well as government counsel, are located in either Missouri or Kansas.   Thus, the overall expenses to be incurred by the parties will be significantly less if the case is tried in the Western District of Missouri, rather than in the Western District of New York.   As set forth in <u>United States v. Estrada</u>, 880 F.Supp.2d 478, 484 (S.D.N.Y. 2012), "[i]n the absence of evidence of a material difference in total travel costs or, more importantly, evidence that [the defendant] cannot afford to bear those costs, this factor does not favor transfer."   Defendant Parry has not alleged that he cannot afford to be tried in the Western District of Missouri.   This factor does not favor a transfer.

        7.      <u>Location of Defense Counsel</u>

While defendant Parry's counsel is located in Buffalo, New York, the majority of counsel for the other defendants set for trial are not located in New York.   Counsel for the other

defendants are located in the following cities:

> T. Cameron Jones – Lee's Summit, Missouri;
> Gholamreza Tadaiyon – Olathe, Kansas;
> Harry Najim – Wichita, Kansas;
> Tara Sundown – Buffalo, New York;
> Philip Christ – St. Louis, Missouri;
> Mousa Juma – Norfolk, Virginia;
> Payam Kheimehdooz – Kansas City, Missouri;
> Mohsen Rostami – Kansas City, Missouri; and
> Salvatore Tornabene – Buffalo, New York.

As the majority of defense counsel in this case are located in either Missouri or Kansas, this factor does not favor a transfer.

### 8. Relative Accessibility of the Place of Trial

Defendant Parry contends that Buffalo, New York, is easily accessible. (Motion to Transfer (doc #173) at 13). The Court notes that Kansas City, Missouri, is also easily accessible. This factor does not favor a transfer.

### 9. Docket Conditions of Each Potential District

Counsel for defendant Parry contacted both courts and was informed that the Western District of Missouri (in Kansas City) has 438 pending criminal cases while the Western District of New York (in Buffalo) has 573 pending criminal cases. (Motion to Transfer (doc #173) at 13) Defendant states that this factor is neutral in the analysis. (Id.)

### 10. Other Special Circumstances

Finally, defendant Parry contends that this Court should abstain in this case for the following reason:

> 20. … [D]ue to the complex state cigarette taxation scheme and its impermissible imposition on sovereign Native American treaties codified in New York State Indian Law, this Court should transfer this action to the Western District of New York, where the local judiciary is more familiar with the issues herein.

26

21.    At the very least, this Court should stay the proceedings until the defendant receives in New York State Supreme Court a declaratory judgment with regards to the state cigarette taxation issues at bar.[13] …

\* \* \*

23.    In other words, a federal court should abstain from matters involving state laws that are in flux, as state sovereignty requires that federal intervention wait until the particular issue is resolved by the state. …

(Motion to Transfer (doc #173) at 15-16)

In its Report and Recommendation regarding defendant Parry's Motion to Dismiss, the Court examined defendant's arguments which defendant sets forth again in this Motion to Transfer.   The Court concluded:

Contrary to defendant Parry's arguments, the New York state cigarette taxing scheme, and in turn the CCTA, are applicable to defendant on the Cattaraugus Indian Reservation.   Accordingly, the criminal activity alleged within the indictment alleges a crime upon which the federal government can assert over defendant Parry.   The Court sees no need to stay these proceedings to wait for a ruling from the New York state courts on the constitutionality of the cigarette taxing scheme.   Courts have repeatedly upheld state cigarette taxing schemes on Indian reservations in New York and other states.   Defendant's motion to dismiss for lack of jurisdiction must be denied.

(Doc #259 at 9-10)   This factor does not favor a transfer.

In sum, the Court has found that none of the Platt factors weigh in favor of transfer. Defendant Parry has not shown that the interests of justice require deviation from the "general rule" that "a criminal prosecution should be retained in the original district."   United States v. Estrada, 880 F.Supp.2d 478, 485 (S.D.N.Y. 2012).   Further, this Court believes its familiarity

[13]Defendant Parry further states:   "Here, the defendant has already filed an action in New York State Supreme Court addressing among other pertinent issues, the conflict between Indian Law Section 6 and New York State Tax Law Art. 471 [See Index No. 82670; White v. Schneidermam, et al.]"   (Motion to Transfer (doc #173 at 20)   However, the Court notes that while defendant Parry's counsel is involved in the cited case, there is no indication that defendant Parry is a party to the case.   (See doc #212-1)

27

with the facts of this case weighs in favor of retaining the case in this district. It would not be in the interest of judicial economy to burden another court with the trial of the remaining defendants, or even with the trial of just defendant Parry, if he were severed. Two of the defendants have already pled guilty and will be sentenced in the Western District of Missouri. Should any of the remaining defendants be found guilty at trial, it would promote consistency for all defendants who have either pled guilty or been found guilty to be sentenced by the same judge. The Court declines to exercise its discretion to transfer this case to the Western District of New York.

### III. CONCLUSION

For the foregoing reasons, it is

ORDERED that defendant Parry's Motion for Severance (doc #196) is denied. It is further

ORDERED that defendant Parry's Motion to Transfer (doc #173) is denied. It is further

ORDERED that the government's Motion for Extension of Time to Respond to Motion to Transfer (doc #174) is moot.

*/s/ Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE

28